*176 OPINION OF THE COURT
Daniel F. Luciano, J.
The guardian, Morrey Barsky, has made an ex parte application to the court for an order modifying and expanding the powers granted to him by the order dated February 18, 1994. The additional powers sought involve the fight to direct whether life sustaining treatment should be provided to or withheld from the incapacitated person, Virginia E. Kyle.
The guardian, Morrey Barsky, indicates that Virginia E. Kyle has no living relatives. Notwithstanding that it might have been preferable to have made this application on notice to St. Francis Hospital (located in Roslyn, New York) at which Virginia E. Kyle is a patient, in view of the court’s conclusion herein, the ex parte nature of the application will not preclude its consideration.
The court is advised that due to a heart attack or stroke suffered by Virginia E. Kyle on April 3, 1995, she can no longer swallow and, thus, cannot ingest solid food. Surgical insertion of a nutrition and hydration tube into Mrs. Kyle’s stomach has been recommended.
The guardian indicates that "[i]t is [his] opinion based upon conversations with Virginia E. Kyle that such treatment is not reflective of Mrs. Kyle’s best interests or desires as to preserving her personal dignity” and that he informed the attending physician that he would not consent to the procedure.
Apparently recognizing that there is a question as to whether his present authority encompassed the right to make such a decision, the guardian has made the current application seeking an expansion of his powers.
The order granted on February 18, 1994 (which is erroneously dated Feb. 18, 1993) appointing Morrey Barsky as the guardian for Virginia E. Kyle is not explicit in the detail of the powers granted, but such order reflects the intention to appoint Morrey Barsky as the guardian for the property management and personal needs of Virginia E. Kyle, with such personal needs powers to broadly include those set forth in section 81.22 (a) (8) of the Mental Hygiene Law, to wit, the power to: "consent to or refuse generally accepted routine or major medical or dental treatment; the guardian shall make treatment decisions consistent with the findings under section 81.15 of [the Mental Hygiene Law] and in accordance with the patient’s wishes, including the patient’s religious and moral *177 beliefs, or if the patient’s wishes are not known and cannot be ascertained with reasonable diligence, in accordance with the person’s best interests, including a consideration of the dignity and uniqueness of every person, the possibility and extent of preserving the person’s life, the preservation, improvement or restoration of the person’s health or functioning, the relief of the person’s suffering, the adverse side effects associated with the treatment, and any less intrusive alternative treatments, and such other concerns and values as a reasonable person in the incapacitated person’s circumstances would wish to consider.”
Section 81.29 (e) of the Mental Hygiene Law provides: "Nothing in this article shall be construed either to prohibit a court from granting, or to authorize a court to grant, to any person the power to give consent for the withholding or withdrawal of life sustaining treatment, including artificial nutrition and hydration. When used in this article, life sustaining treatment means medical treatment which is sustaining life functions and without which, according to reasonable medical judgment, that patient will die within a relatively short time period.”
The Law Revision Commission Comments to Mental Hygiene Law § 81.29 explain: "This section also makes clear that Article 81 does not change the current law in New York regarding whether a guardian has the authority to make decisions regarding the withholding or withdrawal of life sustaining treatment nor does it impede the development of the law in this area. Under present New York law, the right to decline treatment is a personal one whose exercise has been denied to a third party when the patient is unable to do so unless a health care proxy or Do Not Resuscitate Order is in place or there is otherwise clear and convincing evidence of the patient’s wishes regarding such treatment expressed while the patient was competent (Matter of O’Connor, 72 N.Y.2d 517, 534 N.Y.S.2d 886, 531 N.E.2d 607 [1988]).” (Law Rev Commn Comments, McKinney’s Cons Laws of NY, Book 34A, Mental Hygiene Law § 81.29, 1995 Pocket Part, at 351.)
Although the appointing order refers to a necessity for " 'Do Not Resuscitate’ Orders”, in actually granting powers, it provided that Morrey Barsky was "appointed Guardian of the person and property of Virginia E. Kyle with the usual powers incidental thereto as provided by law.”
Since "do not resuscitate orders” are not "usual powers *178 incidental thereto”, the authority to issue such an order has not been granted to the guardian, Morrey Barsky, herein.
In an article entitled "Guardians, and Decisions Regarding Life Sustaining Treatment” which appeared in the New York Law Journal on November 9, 1994, page 1, column 1, the author, Robert Abrams, Esq., after reviewing the relevant provisions of article 81 of the Mental Hygiene Law, and the intent of the Law Revision Commission in proposing that article stated: "in the absence of a health care proxy, the Commission attempted to design the law to require the guardianship court to conduct an evidentiary hearing as to the incapacitated person’s prior expressed wishes regarding life sustaining treatment as required by the Court of Appeals in O’Connor. ” (NYLJ, Nov. 9, 1994, col 3, at 4.)
The decision to allow a third person to make a determination to withhold life sustaining treatment must be based on clear and convincing evidence that such a decision is consistent with what the patient would have directed if able to make and express a determination. (Matter of Westchester County Med. Ctr. [O’Connor], 72 NY2d 517, supra.)
Certainly, the submissions made upon the current ex parte application to the court do not satisfy the requisite "clear and convincing” standard. In fact, in a letter dated April 7, 1993 from Brian G. Cunningham, Esq., of Cunningham & Lee, Esqs., counsel for the guardian, Morrey Barsky, which constitutes a part of the current ex parte application it is stated: "In this case, despite the length of time Mr. Barsky has known Mrs. Kyle, (well in excess of four years) her current status as a legally incompetent person would make it very difficult to present clear and convincing evidence of her wishes while she was competent.”
In his affidavit sworn to on April 8, 1995 the guardian, Morrey Barsky, offers only the above-referenced conclusionary assertion that "[i]t is [his] opinion based upon conversations had with Virginia E. Kyle that such treatment [surgical insertion of a nutrition and hydration tube into Mrs. Kyle’s stomach] is not reflective of Mrs. Kyle’s interests or desires as to preserving her personal dignity.”
It thus appears that the guardian herein, Morrey Barsky, would be unable to present evidence sufficient to match the level of proof offered by the patient’s daughters in Matter of Westchester County Med. Ctr. (O’Connor) (supra), which the Court of Appeals found insufficient to support a determination *179 that they could decide whether life sustaining treatment should be provided or withheld for their mother. (See also, Wickel v Spellman, 159 AD2d 576.)
For the foregoing reasons, it is ordered that the application by the guardian, Morrey Barsky, for an expansion of powers to include the power to determine whether life sustaining treatment should be provided to or withheld from the incapacitated person is denied, and it is further ordered that the guardian, Morrey Barsky, serve a copy of this order upon the director or administrator of St. Francis Hospital.